Justice ALITOdelivered the opinion of the Court.
Sometimes two different tribunals are asked to decide the same issue. When that happens, the decision of the first tribunal usually must be followed by the second, at least if the issue is really the same. Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time, and it *1299 encourages parties who lose before one tribunal to shop around for another. The doctrine of collateral estoppel or issue preclusion is designed to prevent this from occurring.
This case concerns the application of issue preclusion in the context of trademark law. Petitioner, B & B Hardware, Inc. (B & B), and respondent Hargis Industries, Inc. (Hargis), both use similar trademarks; B & B owns SEALTIGHT while Hargis owns SEALTITE. Under the Lanham Act, 60 Stat. 427, as amended, 15 U.S.C. § 1051 et seq.,an applicant can seek to register a trademark through an administrative process within the United States Patent and Trademark Office (PTO). But if another party believes that the PTO should not register a mark because it is too similar to its own, that party can oppose registration before the Trademark Trial and Appeal Board (TTAB). Here, Hargis tried to register the mark SEALTITE, but B & B opposed SEALTITE's registration. After a lengthy proceeding, the TTAB agreed with B & B that SEALTITE should not be registered.
In addition to permitting a party to object to the registration of a mark, the Lanham Act allows a mark owner to sue for trademark infringement. Both a registration proceeding and a suit for trademark infringement, more-over, can occur at the same time. In this case, while the TTAB was deciding whether SEALTITE should be registered, B & B and Hargis were also litigating the SEALTIGHT versus SEALTITE dispute in federal court. In both registration proceedings and infringement litigation, the tribunal asks whether a likelihood of confusion exists between the mark sought to be protected (here, SEALTIGHT) and the other mark (SEALTITE).
The question before this Court is whether the District Court in this case should have applied issue preclusion to the TTAB's decision that SEALTITE is confusingly similar to SEALTIGHT. Here, the Eighth Circuit rejected issue preclusion for reasons that would make it difficult for the doctrine ever to apply in trademark disputes. We disagree with that narrow understanding of issue preclusion. Instead, consistent with principles of law that apply in innumerable contexts, we hold that a court should give preclusive effect to TTAB decisions if the ordinary elements of issue preclusion are met. We therefore reverse the judgment of the Eighth Circuit and remand for further proceedings.
I
A
Trademark law has a long history, going back at least to Roman times. See Restatement (Third) of Unfair Competition § 9, Comment b(1993). The principle underlying trademark protection is that distinctive marks-words, names, symbols, and the like-can help distinguish a particular artisan's goods from those of others. Ibid.One who first uses a distinct mark in commerce thus acquires rights to that mark. See 2 J. McCarthy, Trademarks and Unfair Competition § 16:1 (4th ed. 2014)(hereinafter McCarthy). Those rights include preventing others from using the mark. See 1 A. LaLonde, Gilson on Trademarks § 3.02[8] (2014) (hereinafter Gilson).
Though federal law does not create trademarks, see, e.g., In re Trade-Mark Cases,100 U.S. 82, 92, 25 L.Ed. 550 (1879), Congress has long played a role in protecting them. In 1946, Congress enacted the Lanham Act, the current federal trademark scheme. As relevant here, the Lanham Act creates at least two adjudicative mechanisms to help protect marks. First, *1300 a trademark owner can register its mark with the PTO. Second, a mark owner can bring a suit for infringement in federal court.
Registration is significant. The Lanham Act confers "important legal rights and benefits" on trademark owners who register their marks. 3 McCarthy § 19:3, at 19-21see also id.,§ 19:9, at 19-34 (listing seven of the "procedural and substantive legal advantages" of registration). Registration, for instance, serves as "constructive notice of the registrant's claim of ownership" of the mark. 15 U.S.C. § 1072. It also is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." § 1057(b). And once a mark has been registered for five years, it can become "incontestable." §§ 1065, 1115(b).
To obtain the benefits of registration, a mark owner files an application with the PTO.§ 1051. The application must include, among other things, "the date of the applicant's first use of the mark, the date of the applicant's first use of the mark in commerce, the goods in connection with which the mark is used, and a drawing of the mark." § 1051(a)(2). The usages listed in the application-i.e., those goods on which the mark appears along with, if applicable, their channels of distribution-are critical. See, e.g., 3 McCarthy § 20:24, at 20-83("[T]he applicant's right to register must be made on the basis of the goods described in the application"); id.,§ 20:15, at 20-85 (explaining that if an "application does not delimit any specific trade channels of distribution, no limitation will be" applied). The PTO generally cannot register a mark which "so resembles" another mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d).
If a trademark examiner believes that registration is warranted, the mark is published in the Official Gazette of the PTO. § 1062. At that point, "[a]ny person who believes that he would be damaged by the registration" may "file an opposition." § 1063(a). Opposition proceedings occur before the TTAB (or panels thereof). § 1067(a). The TTAB consists of administrative trademark judges and high-ranking PTO officials, including the Director of the PTO and the Commissioner of Trademarks. § 1067(b).
Opposition proceedings before the TTAB are in many ways "similar to a civil action in a federal district court." TTAB Manual of Procedure § 102.03 (2014) (hereinafter TTAB Manual), online at http://www.uspto.gov (as visited Mar. 20, 2015, and available in Clerk of Court's case file). These proceedings, for instance, are largely governed by the Federal Rules of Civil Procedure and Evidence. See 37 C.F.R. §§ 2.116(a), 2.122(a) (2014). The TTAB also allows discovery and depositions. See §§ 2.120, 2.123(a). The party opposing registration bears the burden of proof, see § 2.116(b), and if that burden cannot be met, the opposed mark must be registered, see 15 U.S.C. § 1063(b).
The primary way in which TTAB proceedings differ from ordinary civil litigation is that "proceedings before the Board are conducted in writing, and the Board's actions in a particular case are based upon the written record therein." TTAB Manual § 102.03. In other words, there is no live testimony. Even so, the TTAB allows parties to submit transcribed testimony, taken under oath and subject to cross-examination, and to request oral argument. See 37 C.F.R. §§ 2.123, 2.129.
*1301 When a party opposes registration because it believes the mark proposed to be registered is too similar to its own, the TTAB evaluates likelihood of confusion by applying some or all of the 13 factors set out in In re E.I. DuPont DeNemours & Co.,476 F.2d 1357 (CCPA 1973). After the TTAB decides whether to register the mark, a party can seek review in the U.S. Court of Appeals for the Federal Circuit, or it can file a new action in district court. See 15 U.S.C. § 1071. In district court, the parties can conduct additional discovery and the judge resolves registration de novo. § 1071(b); see also 3 McCarthy § 21:20(explaining differences between the forums); cf. Kappos v. Hyatt,566 U.S. ----, 132 S.Ct. 1690, 182 L.Ed.2d 704 (2012)(de novoreview for analogous scheme in patent law).
The Lanham Act, of course, also creates a federal cause of action for trademark infringement. The owner of a mark, whether registered or not, can bring suit in federal court if another is using a mark that too closely resembles the plaintiff's. The court must decide whether the defendant's use of a mark in commerce "is likely to cause confusion, or to cause mistake, or to deceive" with regards to the plaintiff's mark. See 15 U.S.C. § 1114(1)(a)(registered marks); § 1125(a)(1)(A)(unregistered marks). In infringement litigation, the district court considers the full range of a mark's usages, not just those in the application.
B
Petitioner B & B and respondent Hargis both manufacture metal fasteners. B & B manufactures fasteners for the aerospace industry, while Hargis manufactures fasteners for use in the construction trade. Although there are obvious differences between space shuttles and A-frame buildings, both aerospace and construction engineers prefer fasteners that seal things tightly. Accordingly, both B & B and Hargis want their wares associated with tight seals. A feud of nearly two decades has sprung from this seemingly commonplace set of facts.
In 1993 B & B registered SEALTIGHT for "threaded or unthreaded metal fasteners and other related hardwar[e]; namely, self-sealing nuts, bolts, screws, rivets and washers, all having a captive o-ring, for use in the aerospace industry." App. 223a (capitalization omitted). In 1996, Hargis sought to register SEALTITE for "self-piercing and self-drilling metal screws for use in the manufacture of metal and post-frame buildings." App. 70a (capitalization omitted). B & B opposed Hargis' registration because, although the two companies sell different products, it believes that SEALTITE is confusingly similar to SEALTIGHT.
The twists and turns in the SEALTIGHT versus SEALTITE controversy are labyrinthine. The question whether either of these marks should be registered, and if so, which one, has bounced around within the PTO for about two decades; related infringement litigation has been before the Eighth Circuit three times; and two separate juries have been empaneled and returned verdicts. The full story could fill a long, unhappy book.
For purposes here, we pick up the story in 2002, when the PTO published SEALTITE in the Official Gazette. This prompted opposition proceedings before the TTAB, complete with discovery, including depositions. B & B argued that SEALTITE could not be registered because it is confusingly similar to SEALTIGHT. B & B explained, for instance, that both companies have an online presence, the largest distributor of fasteners sells both companies' products, and consumers sometimes call the wrong company *1302 to place orders. Hargis rejoined that the companies sell different products, for different uses, to different types of consumers, through different channels of trade.
Invoking a number of the DuPontfactors, the TTAB sided with B & B. The Board considered, for instance, whether SEALTIGHT is famous (it's not, said the Board), how the two products are used (differently), how much the marks resemble each other (very much), and whether customers are actually confused (perhaps sometimes). See App. to Pet. for Cert. 55a-71a. Concluding that "the most critical factors in [its] likelihood of confusion analysis are the similarities of the marks and the similarity of the goods," id.,at 70a, the TTAB determined that SEALTITE-when "used in connection with 'self-piercing and self-drilling metal screws for use in the manufacture of metal and post-frame buildings' "-could not be registered because it "so resembles" SEALTIGHT when "used in connection with fasteners that provide leakproof protection from liquids and gases, fasteners that have a captive o-ring, and 'threaded or unthreaded metal fastners and other related hardware ... for use in the aerospace industry' as to be likely to cause confusion," id.,at 71a. Despite a right to do so, Hargis did not seek judicial review in either the Federal Circuit or District Court.
All the while, B & B had sued Hargis for infringement. Before the District Court ruled on likelihood of confusion, however, the TTAB announced its decision. After a series of proceedings not relevant here, B & B argued to the District Court that Hargis could not contest likelihood of confusion because of the preclusive effect of the TTAB decision. The District Court disagreed, reasoning that the TTAB is not an Article III court. The jury returned a verdict for Hargis, finding no likelihood of confusion.
B & B appealed to the Eighth Circuit. Though accepting for the sake of argument that agency decisions can ground issue preclusion, the panel majority affirmed for three reasons: first, because the TTAB uses different factors than the Eighth Circuit to evaluate likelihood of confusion; second, because the TTAB placed too much emphasis on the appearance and sound of the two marks; and third, because Hargis bore the burden of persuasion before the TTAB, while B & B bore it before the District Court. 716 F.3d 1020 (2013). Judge Colloton dissented, concluding that issue preclusion should apply. After calling for the views of the Solicitor General, we granted certiorari. 573 U.S. ----, 134 S.Ct. 2899, 189 L.Ed.2d 854 (2014).
II
The first question that we must address is whether an agency decision can ever ground issue preclusion. The District Court rejected issue preclusion because agencies are not Article III courts. The Eighth Circuit did not adopt that view, and, given this Court's cases, it was right to take that course.
This Court has long recognized that "the determination of a question directly involved in one action is conclusive as to that question in a second suit." Cromwell v. County of Sac,94 U.S. 351, 354, 24 L.Ed. 195 (1877). The idea is straightforward: Once a court has decided an issue, it is "forever settled as between the parties," Baldwin v. Iowa State Traveling Men's Assn.,283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931), thereby "protect[ing]" against "the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts,"
*1303 Montana v. United States,440 U.S. 147, 153-154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). In short, "a losing litigant deserves no rematch after a defeat fairly suffered." Astoria Fed. Sav. & Loan Assn. v. Solimino,501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).
Although the idea of issue preclusion is straightforward, it can be challenging to implement. The Court, therefore, regularly turns to the Restatement (Second) of Judgments for a statement of the ordinary elements of issue preclusion. See, e.g., Bobby v. Bies,556 U.S. 825, 834, 129 S.Ct. 2145, 173 L.Ed.2d 1173 (2009); New Hampshire v. Maine,532 U.S. 742, 748-749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); Baker v. General Motors Corp.,522 U.S. 222, 233, n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). The Restatement explains that subject to certain well-known exceptions, the general rule is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."Restatement (Second) of Judgments § 27, p. 250 (1980); see also id.,§ 28, at 273(listing exceptions such as whether appellate review was available or whether there were "differences in the quality or extensiveness of the procedures followed").
Both this Court's cases and the Restatement make clear that issue preclusion is not limited to those situations in which the same issue is before two courts. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies. Indeed, this Court has explained that because the principle of issue preclusion was so "well established" at common law, in those situations in which Congress has authorized agencies to resolve disputes, "courts may take it as given that Congress has legislated with the expectation that the principle [of issue preclusion] will apply except when a statutory purpose to the contrary is evident." Astoria, supra,at 108, 111 S.Ct. 2166. This reflects the Court's longstanding view that " '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.' " University of Tenn. v. Elliott,478 U.S. 788, 797-798, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)(quoting United States v. Utah Constr. & Mining Co.,384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)); see also Hayfield Northern R. Co. v. Chicago & North Western Transp. Co.,467 U.S. 622, 636, n. 15, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1984)(noting Utah Construction); Kremer v. Chemical Constr. Corp.,456 U.S. 461, 484-485, n. 26, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)(characterizing Utah Construction's discussion of administrative preclusion as a holding); Restatement (Second) of Judgments § 83(1), at 266(explaining that, with some limits, "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court").
Although apparently accepting Astoriaand Utah Construction,[1]Hargis argues *1304 that we should not read the Lanham Act (or, presumably, many other federal statutes) as authorizing issue preclusion. Otherwise, Hargis warns, the Court would have to confront " 'grave and doubtful questions' as to the Lanham Act's consistency with the Seventh Amendment and Article III of the Constitution." Brief for Respondent 38 (quoting United States ex rel. Attorney General v. Delaware & Hudson Co.,213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). We are not persuaded.
At the outset, we note that Hargis does not argue that giving issue preclusive effect to the TTAB's decision would be unconstitutional. Instead, Hargis contends only that we should read the Lanham Act narrowly because a broad reading mightbe unconstitutional. See, e.g.,Brief for Respondent 37, 39, 40, 41-42. The likely reason that Hargis has not directly advanced a constitutional argument is that, at least as to a jury trial right, Hargis did not even list the Seventh Amendment as an authority in its appellee brief to the Eighth Circuit. Moreover, although Hargis pressed an Article III argument below, in its opposition to certiorari in this Court, Hargis seemingly conceded that TTAB decisions can sometimesground issue preclusion, though it now protests otherwise. See Supplemental Brief in Opposition 2. To the extent, if any, that there could be a meritorious constitutional objection, it is not before us. See Plaut v. Spendthrift Farm, Inc.,514 U.S. 211, 231-232, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).
We reject Hargis' statutory argument that we should jettison administrative preclusion in whole or in part to avoid potential constitutional concerns. As to the Seventh Amendment, for instance, the Court has already held that the right to a jury trial does not negate the issue-preclusive effect of a judgment, even if that judgment was entered by a juryless tribunal. See Parklane Hosiery Co. v. Shore,439 U.S. 322, 337, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). It would seem to follow naturally that although the Seventh Amendment creates a jury trial right in suits for trademark damages, see Dairy Queen, Inc. v. Wood,369 U.S. 469, 477, 479-480, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), TTAB decisions still can have preclusive effect in such suits. Hargis disputes this reasoning even though it admits that in 1791 " 'a party was not entitled to have a jury determine issues that had been previously adjudicated by a chancellor in equity.' " Brief for Respondent 39 (quoting Parklane Hosiery, supra,at 333, 99 S.Ct. 645). Instead, Hargis contends that issue preclusion should not apply to TTAB registration decisions because there were no agencies at common law. But our precedent holds that the Seventh Amendment does not strip competent tribunals of the power to issue judgments with preclusive effect; that logic would not seem to turn on the nature of the competent tribunal. And at the same time, adopting Hargis' view would dramatically undercut agency preclusion, despite what the Court has already said to the contrary. Nothing in Hargis' avoidance argument is weighty enough to overcome these weaknesses.
The claim that we should read the Lanham Act narrowly to avoid Article III concerns is equally unavailing-and for similar reasons. Hargis argues that because it might violate Article III if an agency could make a decision with preclusive effect in a later proceeding before a federal court, we should conclude, as a statutory matter, that issue preclusion is unavailable. Such a holding would not fit with our precedent. For instance, in Elliott,the Court, relying on Utah Construction, *1305 explained that absent a contrary indication, Congress presumptively intends that an agency's determination (there, a state agency) has preclusive effect. 478 U.S., at 796-799, 106 S.Ct. 3220; see also Astoria,501 U.S., at 110, 111 S.Ct. 2166(recognizing the "presumption"). To be sure, the Court has never addressed whether such preclusion offends Article III. But because this Court's cases are so clear, there is no ambiguity for this Court to sidestep through constitutional avoidance.[2]
III
The next question is whether there is an "evident" reason why Congress would not want TTAB decisions to receive preclusive effect, even in those cases in which the ordinary elements of issue preclusion are met. Astoria, supra,at 108, 111 S.Ct. 2166. We conclude that nothing in the Lanham Act bars the application of issue preclusion in such cases.
The Lanham Act's text certainly does not forbid issue preclusion. Nor does the Act's structure. Granted, one can seek judicial review of a TTAB registration decision in a de novodistrict court action, and some courts have concluded from this that Congress does not want unreviewed TTAB decisions to ground issue preclusion. See, e.g.,American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,494 F.2d 3, 9-10 (C.A.5 1974). But that conclusion does not follow. Ordinary preclusion law teaches that if a party to a court proceeding does not challenge an adverse decision, that decision can have preclusive effect in other cases, even if it would have been reviewed de novo. See Restatement (Second) of Judgments § 28, Comment aand Illustration 1 (explaining that the failure to pursue an appeal does not undermine issue preclusion and including an example of an apparently unappealed district court's dismissal for failure to state a claim); cf. Federated Department Stores, Inc. v. Moitie,452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)(noting "the res judicata consequences of a final, unappealed judgment on the merits").
This case is also unlike Astoria,where a plaintiff claiming discrimination first went to an agency and then sued in court about the same alleged conduct. See 501 U.S., at 111, 111 S.Ct. 2166. The Court concluded, quite sensibly, that the structure of that scheme indicated that the agency decision could not ground issue preclusion. When exhausting an administrative process is a prerequisite to suit in court, giving preclusive effect to the agency's determination in that very administrative process could render the judicial suit "strictly pro forma." Ibid.; see also Elliott, supra,at 795-796, 106 S.Ct. 3220(similar analysis). Here, if a party urged a district court reviewing a TTAB registration decision to give preclusive effect to the very TTAB decision under review, Astoriawould apply. But that is not this case.
What matters here is that registration is not a prerequisite to an infringement action. Rather, it is a separate proceeding to decide separate rights. Neither is issue preclusion a one-way street. When a district court, as part of its judgment, *1306 decides an issue that overlaps with part of the TTAB's analysis, the TTAB gives preclusive effect to the court's judgment. See App. to Pet. for Cert. 54a-55a (giving preclusive effect to the District Court's earlier decision regarding SEALTIGHT's distinctiveness because the issue "was actually litigated and necessarily determined").
Hargis also argues that allowing TTAB decisions to have issue-preclusive effect will adversely affect the registration process. Because of the TTAB's " 'limited jurisdiction' " and " 'the narrowness of the issues' " before it, Hargis contends, the Court should infer that TTAB proceedings are supposed to be more streamlined than infringement litigation. See Brief for Respondent 30 (quoting TTAB Manual § 402.01). But, the argument goes, if TTAB decisions can have issue-preclusive effect in infringement litigation, parties may spend more time and energy before the TTAB, thus bogging down the registration process. This concern does not change our conclusion. Issue preclusion is available unless it is "evident," Astoria, supra,at 108, 111 S.Ct. 2166that Congress does not want it. Here, if a streamlined process in all registration matters was particularly dear to Congress, it would not have authorized de novochallenges for those "dissatisfied" with TTAB decisions. 15 U.S.C. § 1071(b). Plenary review serves many functions, but ensuring a streamlined process is not one of them. Moreover, as explained below, for a great many registration decisions issue preclusion obviously will not apply because the ordinary elements will not be met. For those registrations, nothing we say today is relevant.
IV
At last we turn to whether there is a categorical reason why registration decisions can never meet the ordinary elements of issue preclusion, e.g., those elements set out in § 27 of the Restatement (Second) of Judgments. Although many registrations will not satisfy those ordinary elements, that does not mean that none will. We agree with Professor McCarthy that issue preclusion applies where "the issues in the two cases are indeed identical and the other rules of collateral estoppel are carefully observed." 6 McCarthy § 32:99, at 32-244; see also 3 Gilson § 11.08[4][i][iii][B], p. 11-319 ("Ultimately, Board decisions on likelihood of confusion ... should be given preclusive effect on a case-by-case basis").
A
The Eighth Circuit's primary objection to issue preclusion was that the TTAB considers different factors than it does. Whereas the TTAB employs some or all of the DuPontfactors to assess likelihood of confusion, the Eighth Circuit looks to similar, but not identical, factors identified in SquirtCo v. Seven-Up Co.,628 F.2d 1086, 1091 (C.A.8 1980). The court's instinct was sound: "[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4417, p. 449 (2d ed. 2002)(hereinafter Wright & Miller). Here, however, the same likelihood-of-confusion standard applies to both registration and infringement.
To begin with, it does not matter that registration and infringement are governed by different statutory provisions. Often a single standard is placed in different statutes; that does not foreclose issue preclusion. See, e.g.,Smith v. Bayer Corp.,564 U.S. ----, ----, 131 S.Ct. 2368, 2376, 180 L.Ed.2d 341 (2011). Neither *1307 does it matter that the TTAB and the Eighth Circuit use different factors to assess likelihood of confusion. For one thing, the factors are not fundamentally different, and "[m]inor variations in the application of what is in essence the same legal standard do not defeat preclusion." Id.,at ----, n. 9, 131 S.Ct., at 2378, n. 9. More important, if federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently. A contrary rule would encourage the very evils that issue preclusion helps to prevent.
The real question, therefore, is whether likelihood of confusion for purposes of registration is the same standard as likelihood of confusion for purposes of infringement. We conclude it is, for at least three reasons. First, the operative language is essentially the same; the fact that the registration provision separates "likely" from "to cause confusion, or to cause mistake, or to deceive" does not change that reality.[3]See 2 Gilson § 5.01[2][a], at 5-17 (explaining that "the same statutory test" applies). Second, the likelihood-of-confusion language that Congress used in these Lanham Act provisions has been central to trademark registration since at least 1881. See Act of Mar. 3, 1881, ch. 138, § 3, 21 Stat. 503 (using a "likely to cause confusion" standard for registration). That could hardly have been by accident. And third, district courts can cancel registrations during infringement litigation, just as they can adjudicate infringement in suits seeking judicial review of registration decisions. See 15 U.S.C. § 1119; 3 McCarthy § 21:20. There is no reason to think that the same district judge in the same case should apply two separate standards of likelihood of confusion.
Hargis responds that the text is not actually the same because the registration provision asks whether the marks "resemble" each other, 15 U.S.C. § 1052(d), while the infringement provision is directed towards the "use in commerce" of the marks, § 1114(1). Indeed, according to Hargis, the distinction between "resembl[ance]" and "use" has been key to trademark law for over a century. There is some force to this argument. It is true that "a party opposing an application to register a mark before the Board often relies only on its federal registration, not on any common-law rights in usages not encompassed by its registration," and "the Board typically analyzes the marks, goods, and channels of trade only as set forth in the application and in the opposer's registration, regardless of whether the actual usage of the marks by either party differs." Brief for United States as Amicus Curiae23; see also id.,at 5 (explaining that "the Board typically reviews only the usages encompassed by the registration") (citing 3 Gilson § 9.03[2][a][ii] ); 3 McCarthy § 20:15, at 20-45(explaining that for registration "it is the mark as shown in the application and as used on the goods described in the application which must be considered, not the mark as actually used"). This means *1308 that unlike in infringement litigation, "[t]he Board's determination that a likelihood of confusion does or does not exist will not resolve the confusion issue with respect to non-disclosed usages." Brief for United States as Amicus Curiae23.
Hargis' argument falls short, however, because it mistakes a reason not to apply issue preclusion in some or even many cases as a reason never to apply issue preclusion. Just because the TTAB does not always consider the same usagesas a district court does, it does not follow that the Board applies a different standardto the usages it does consider.[4]If a mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the TTAB is deciding the same likelihood-of-confusion issue as a district court in infringement litigation. By contrast, if a mark owner uses its mark in ways that are materially unlike the usages in its application, then the TTAB is not deciding the same issue. Thus, if the TTAB does not consider the marketplace usage of the parties' marks, the TTAB's decision should "have no later preclusive effect in a suit where actual usage in the marketplace is the paramount issue." 6 McCarthy § 32:101, at 32-246.
Materiality, of course, is essential-trivial variations between the usages set out in an application and the use of a mark in the marketplace do not create different "issues," just as trivial variations do not create different "marks." See generally 4 id., § 23:50, at 23-265 (explaining that "adding descriptive or non-distinctive" elements to another's mark generally will not negate confusion). Otherwise, a party could escape the preclusive effect of an adverse judgment simply by adding an immaterial feature to its mark. That is not the law. See, e.g.,Restatement (Second) of Judgments § 27, Comment c,at 252-253 (explaining that "issue" must be understood broadly enough "to prevent repetitious litigation of what is essentially the same dispute"); United States v. Stauffer Chemical Co.,464 U.S. 165, 172, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984)(applying issue preclusion where a party sought to "litigate twice ... an issue arising ... from virtually identical facts" because the "factual differences" were "of no legal significance").
A fortiori,if the TTAB considers a different mark altogether, issue preclusion would not apply. Needless to say, moreover, if the TTAB has not decided the same issue as that before the district court, there is no reason why any deference would be warranted.
For a similar reason, the Eighth Circuit erred in holding that issue preclusion could not apply here because the TTAB relied too heavily on "appearance and sound." App. to Pet. for Cert. 10a. Undoubtedly there are cases in which the TTAB places more weight on certain factors than it should. When that happens, an aggrieved party should seek judicial review. The fact that the TTAB may have erred, however, does not prevent preclusion. As Judge Colloton observed in dissent, " 'issue preclusion prevent[s] relitigation of wrong decisions just as much as right ones.' " 716 F.3d, at 1029(quoting Clark v. Clark,984 F.2d 272, 273 (C.A.8 1993)); see also Restatement (Second) of Judgments § 28, Comment j,at 284 (explaining that "refusal to give the first judgment *1309 preclusive effect should not ... be based simply on a conclusion that [it] was patently erroneous").
B
Hargis also argues that registration is categorically incompatible with issue preclusion because the TTAB uses procedures that differ from those used by district courts. Granted, "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Montana,440 U.S., at 164, n. 11, 99 S.Ct. 970; see also Parklane Hosiery,439 U.S., at 331, and n. 15, 99 S.Ct. 645(similar). But again, this only suggests that sometimes issue preclusion might be inappropriate, not that it always is.
No one disputes that the TTAB and district courts use different procedures. Most notably, district courts feature live witnesses. Procedural differences, by themselves, however, do not defeat issue preclusion. Equity courts used different procedures than did law courts, but that did not bar issue preclusion. See id., at 333, 99 S.Ct. 645. Nor is there reason to think that the state agency in Elliottused procedures identical to those in federal court; nonetheless, the Court held that preclusion could apply. See 478 U.S., at 796-799, 106 S.Ct. 3220. Rather than focusing on whether procedural differences exist-they often will-the correct inquiry is whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair. See Montana,440 U.S., at 164, n. 11, 99 S.Ct. 970.
Here, there is no categorical "reason to doubt the quality, extensiveness, or fairness," ibid.,of the agency's procedures. In large part they are exactly the same as in federal court. See 37 C.F.R. §§ 2.116(a), 2.122(a). For instance, although "[t]he scope of discovery in Board proceedings.... is generally narrower than in court proceedings"-reflecting the fact that there are often fewer usages at issue-the TTAB has adopted almost the whole of Federal Rule of Civil Procedure 26. TTAB Manual § 402.01; see also id.,§ 401. It is conceivable, of course, that the TTAB's procedures may prove ill-suited for a particular issue in a particular case, e.g., a party may have tried to introduce material evidence but was prevented by the TTAB from doing so, or the TTAB's bar on live testimony may materially prejudice a party's ability to present its case. The ordinary law of issue preclusion, however, already accounts for those "rare" cases where a "compelling showing of unfairness" can be made. Restatement (Second) of Judgments § 28, Comments gand j,at 283-284.
The Eighth Circuit likewise erred by concluding that Hargis bore the burden of persuasion before the TTAB. B & B, the party opposing registration, bore the burden, see 37 C.F.R. § 2.116(b); TTAB Manual § 702.04(a), just as it did in the infringement action. Hargis does not defend the decision below on this ground.
C
Hargis also contends that the stakes for registration are so much lower than for infringement that issue preclusion should never apply to TTAB decisions. Issue preclusion may be inapt if "the amount in controversy in the first action [was] so small in relation to the amount in controversy in the second that preclusion would be plainly unfair." Restatement (Second) of Judgments § 28, Comment j,at 283-284. After all, "[f]ew ... litigants would spend $50,000 to defend a $5,000 claim." Wright & Miller § 4423, at 612. Hargis is wrong, however, that this exception to issue *1310 preclusion applies to every registration. To the contrary: When registration is opposed, there is good reason to think that both sides will take the matter seriously.
The benefits of registration are substantial. Registration is "prima facie evidence of the validity of the registered mark," 15 U.S.C. § 1057(b), and is a precondition for a mark to become "incontestable," § 1065. Incontestability is a powerful protection. See, e.g., Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)(holding that an incontestable mark cannot be challenged as merely descriptive); see also id.,at 193, 105 S.Ct. 658(explaining that "Congress determined that ... 'trademarks should receive nationally the greatest protection that can be given them' " and that "[a]mong the new protections created by the Lanham Act were the statutory provisions that allow a federally registered mark to become incontestable" (quoting S.Rep. No. 1333, 79th Cong., 2d Sess., 6 (1946))).
The importance of registration is undoubtedly why Congress provided for de novoreview of TTAB decisions in district court. It is incredible to think that a district court's adjudication of particular usages would not have preclusive effect in another district court. Why would unchallenged TTAB decisions be different? Congress' creation of this elaborate registration scheme, with so many important rights attached and backed up by plenary review, confirms that registration decisions can be weighty enough to ground issue preclusion.
V
For these reasons, the Eighth Circuit erred in this case. On remand, the court should apply the following rule: So long as the other ordinary elements of issue preclusion are met, when the usages adjudicated by the TTAB are materially the same as those before the district court, issue preclusion should apply.
The judgment of the United States Court of Appeals for the Eighth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.

See Brief for Respondent 28 (acknowledging that administrative "[p]reclusion's status as part of the common-law backdrop means that courts may presume its application" absent contrary indication from Congress) (citing Astoria,501 U.S., at 110, 111 S.Ct. 2166); Brief for Respondent 34 (explaining that Utah Constructiondetermined that "an administrative board's factfinding ... could ... have preclusive effect in an Article III suit raising damages claims over which the board had no jurisdiction").

Our dissenting colleagues argue that Utah Construction's conclusion that courts "have not hesitated" to apply administrative preclusion, 384 U.S., at 422, 86 S.Ct. 1545was mistaken and certainly should not be applied to statutes-such as the Lanham Act-enacted prior to 1966. We do not decide who reads the history better. The Court has repeatedly endorsed Utah Constructionand, importantly, neither party challenges its historical accuracy. For the same reason, we do not decide whether such preclusion is unconstitutional because the issue is not before us.

Compare 15 U.S.C. § 1114(1)("Any person who shall ... use in commerce any ... mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive... shall be liable in a civil action by the registrant for the remedies hereinafter provided" (emphasis added)) with § 1052(d)("No trademark ... shall be refused registration ... unless it ... [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office ... as to be likely,when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive..." (emphasis added)).

The parties dispute whether and how often the TTAB considers usages beyond those listed in the application and registration. We do not resolve that dispute here. Suffice it to say that when the TTAB adjudicates a usage within its authority,that adjudication can ground issue preclusion. See Restatement (Second) of Judgments § 11 (1980).