No. 22-0329, *Ruble et al. v. Rust-Oleum, et al.,*

**ARMSTEAD, C.J., dissenting:**

**FILED**

**June 12, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

The majority reverses the circuit court's determination that Mr. Ruble is precluded from relitigating the workers' compensation decision that his exposure to chemicals at his workplace caused his medical condition. The majority's opinion will permit workers' compensation claimants who have adverse causation determinations in their workers' compensation cases to, nonetheless, proceed with filing civil actions in circuit court against third-party non-employers, essentially providing them a second "bite at the apple" to prove causation. Because I believe that the doctrine of collateral estoppel prohibits such relitigation of the issue of causation under the facts of this case, and the majority's opinion may have a far reaching effects on the law related to issue preclusion that may not be initially apparent, I respectfully dissent.

Mr. Ruble worked at the Rust-Oleum facility in Lesage, West Virginia from approximately 1996 to 2018. In 2019, Mr. Ruble filed an application for workers' compensation benefits alleging that the use and presence of chemicals at his workplace resulted in him suffering an occupational disease which caused sensory neuropathy and dermatitis. By order dated September 24, 2019, the claim administrator denied Mr. Ruble's application. Mr. Ruble appealed the decision of the claim administrator, which was affirmed by the Office of Judges ("OOJ"). He also appealed the decision of the Office of Judges, which was ultimately affirmed by the Board of Review ("Board"). While his worker's compensation case was still pending, he filed a civil action against his employer

1

and almost two dozen third-party chemical companies. Mr. Ruble's civil action alleged the same workplace exposure, the same time frame of exposure and the same injuries as those in his workers' compensation case. After failing to prove that his medical condition was caused by exposure to chemicals at his workplace and receiving an adverse causation determination, Mr. Ruble decided to move forward with a civil action against the third-party chemical companies who allegedly produced the chemicals he maintains caused his illness. By order entered on April 4, 2022, the circuit court dismissed Petitioners' civil action with prejudice after concluding that their claims were barred by collateral estoppel.

I believe we must begin our analysis by examining whether the doctrine of collateral estoppel is properly applied to a workers' compensation decision. Mr. Ruble appears to characterize the application of collateral estoppel to workers' compensation determinations as a new and novel concept in West Virginia. However, in *Steel of West Virginia, Inc. v. West Virginia Office of the Insurance Commissioner*, No. 11-1607 (W. Va. Supreme Court, November 16, 2012)(memorandum decision), this Court clearly applied res judicata to findings contained in a prior workers' compensation decision. I view the majority's new conclusion that the procedures available in a workers' compensation proceeding are not an "adequate substitute" for judicial proceedings available to litigants in a circuit court as essentially a blanket bar to the application of issue preclusion to worker's compensation decisions. By slamming the door on the application of the doctrine of collateral estoppel to findings within a workers' compensation decision based on the procedures available in such proceedings, the majority places undue emphasis on the mere

2

differences between such proceedings and those followed by a circuit court. I believe that such emphasis on the *differences* in procedures, rather than the *adequacy* of the workers' compensation procedures, is in direct contradiction of our holding in *Steel of West Virginia* and the United States Supreme Court's holding in *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 135 S.Ct. 1293 (2015).

The proper inquiry before us is whether the circuit court properly applied collateral estoppel to preclude relitigation of the issue of causation. I believe the answer to this question is yes.

As the majority notes, we have applied a four-part test to determine whether collateral estoppel will bar relitigation of a claim raised in a subsequent action:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

The circuit court analyzed the four *Miller* factors and concluded that collateral estoppel barred Petitioners from relitigating the cause of Mr. Ruble's injuries. The majority reverses the circuit court because it finds that the requirement set forth in the fourth *Miller* factor, namely that "the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action" was not met in this case. *Id.*

In support of its conclusion that Mr. Ruble did not have a full and fair opportunity to litigate the issue of his alleged exposure in the workers' compensation proceedings, the majority references many of the rules that regulated Mr. Ruble's workers' compensation claim, and cites the manner in which they differ from the procedures in civil actions filed in circuit court.[1] For example, the majority notes the limitations on the number of interrogatories a party may pose,[2] as well as the fact that closing arguments were not made orally.[3] However, the rules to which the majority refers in relation to workers' compensation cases clearly allowed claimants the right to a hearing, except as to expedited issues, on "any issue of fact or law upon which the claim administrator has made a decision within the meaning of W. Va. Code §23-5-1(b), and upon the timely filing of a protest."[4] Mr. Ruble does not allege that he requested such hearing or that any such request was denied.[5]

---

[1] As the majority noted, in December 2022, the Board of Review asked that the procedural rules be repealed.

[2] 93 C.S.R. § 7.2.B.2(b). Significantly, while the majority notes this limitation on the number of permitted interrogatories in workers' compensation cases, Rule 33 of the West Virginia Rules of Civil Procedure places a similar limitation of forty permitted interrogatories. As of January 1, 2025, the newly revised Rule 33 of the Rules of Civil Procedure reduces this number to twenty-five. Therefore, the workers' compensation procedures actually provided litigants with the ability to pose more interrogatories than they will be permitted in a civil action beginning in 2025.

[3] 93 C.S.R. § 3.5.

[4] 93 C.S.R. § 8.1.

[5] The rules governing proceedings before the OOJ provide for notice to the parties pursuant to 93 C.S.R. §6.7 which provides, in pertinent part:

The majority's focus on mere differences in procedures, rather than analyzing whether the workers' compensation procedures available to Mr. Ruble provided him a "full and fair opportunity" to litigate the issue of causation, is inconsistent with the Supreme Court's holding in *B&B Hardware*. The Court in *B&B Hardware* made clear that that simply because the procedural processes followed by two forums are *different*, does not equate with the conclusion that the procedures available in the initial forum are fundamentally unfair. The Court expressly found:

> No one disputes that the TTAB and district courts use different procedures. Most notably, district courts feature live witnesses. ***Procedural differences, by themselves, however, do not defeat issue preclusion***. Equity courts used different procedures than did law courts, but that did not bar issue preclusion. Nor is there reason to think that the state agency in *Elliott* used procedures identical to those in federal court; nonetheless, the Court held that preclusion could apply. ***Rather than focusing on whether procedural differences exist—they often will—the correct inquiry is whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair.***

*Id*, 575 U.S. at 158, 135 S.Ct. at 1309 (2015) (emphasis added) (internal citations omitted).

Clearly, the procedures available to Mr. Ruble in the workers' compensation case, while perhaps different that those to which he may be afforded before the circuit court, were not "fundamentally poor, cursory, or unfair." Elaborating on the holding in *B&B Hardware*, and citing the Restatement (Second) of Judgments, the Supreme Court of

---

"6.7. Manner and Receipt of Notice

Any notice required by these rules shall be deemed adequate if served upon counsel of the other parties (or upon the party if not represented by counsel) as may be permitted as in Rule 5 of the West Virginia Rules of Civil Procedure. . ."

5

Alabama clarified the key elements that should be considered in determining if the forum making the initial determination should be afforded preclusive effect:

> The central point expressed by the United States Supreme Court in both *Solimino* and *B & B Hardware* was that, as long as the administrative process in question has the characteristics of an adjudication, there is no reason determinations made in administrative proceedings should not have the same preclusive effect that a court decision would have. The same idea is expressed in the Restatement (Second) of Judgments § 83(1) (1982), which provides that "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court" as long as the administrative "proceeding resulting in the determination entailed the essential elements of adjudication." ***Those "essential elements of adjudication" include "[a]dequate notice to persons who are to be bound by the adjudication" and "[t]he right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties."***

*Canton v. City of Pelham*, 329 So.3d 5, 25 (2020) (emphasis added).

As to the "essential elements of adjudication" set forth in *Canton*, it is clear that each has been satisfied by the procedures that were available to Mr. Ruble in the workers' compensation proceedings. First, with regard to the requirement that there be "adequate notice to persons who are to be bound by the adjudication," it is clear that Mr. Ruble, as the party to be bound by the application of collateral estoppel here, had such notice. Indeed, he was the party who initiated the original workers' compensation case, appealed the claims administrator's denial of his claim to the OOJ, and subsequently

6

appealed the OOJ's decision to the Board, There is no allegation here that Mr. Ruble was, in any way, deprived of adequate notice in relation to the proceedings.

Secondly, the workers' compensation procedures provided Mr. Ruble with the right "to present evidence and legal argument" in support of his contentions that his medical condition was caused by the presence of chemicals at his workplace. Indeed, while the majority makes several references to the OOJ's Rules governing "Litigation of Protests," such rules are replete with procedures and protections ensuring a claimant's right to present evidence and legal argument. Examples of such procedural protections include:

6.5. Case Summations and Arguments in Lieu of Evidence

> Except for purposes of section ten [93-1-10 et seq., "Failure to Prosecute Protest"] of this Rule, *parties may file argument, explanation of case, or statement of authority in a case summation (sometimes referred to as a "closing argument"). . .* (Emphasis added).

6.6. Order of Presentation of Evidence

> Evidence in regard to a protest shall be presented either concurrently or consecutively as set forth by Time Frame Order. The protesting party shall have the burden of going forth with evidence first in those protests with consecutive time frames. In the event that the claimant and at least one employer have protested, the parties shall proceed concurrently.

* * *

> §93-1-7.  EVIDENCE; EXCHANGE and FILING.

7

### 7.1. Introduction

Evidence submitted to the Office of Judges is generally of three types: documentary evidence (i.e., reports, affidavits, treatment records, etc.); testimony of witnesses (either obtained during Office of Judges scheduled administrative hearings or during depositions scheduled by the parties); and physical evidence (i.e., photographs, video recordings, etc.). This section of the Rule relates to the obtaining, presenting, exchanging, and identifying for the Office of Judges, of all evidence regardless of type.

### 7.2. Rules

### A. Rules of Evidence

The Office of Judges shall not be bound by the usual common law or statutory rules of evidence, or by formal rules of procedure, except as provided by these rules. ***An Administrative Law Judge or Hearing Examiner shall receive the relevant testimony and other timely evidence of the parties and witnesses, as may further be limited by subsections 8.1 and 8.5 [93-1-8.1 & 93-1-8.5] of this rule, and subject to objection by any party.*** Provided, that the parties shall not burden the record with cumulative, redundant, or repeated filing of similar evidence. ***All evidence filed must be relevant, material, credible and reliable.*** . . (Emphasis added).

* * *

### 7.3. Documentary Evidence

### B. Exchange of Evidence

### 1. Documents

The report of an expert or any other documentary evidence shall be offered in evidence by delivering the original, or an accurate copy, of such report or document to the

8

Office of Judges with copies to all counsel of the other parties (or to the party if not represented by counsel) as soon as can reasonably be accomplished following receipt of such report or document. . .

## 2. Physical Evidence

Items not susceptible to reproduction or copying shall be brought to the attention of all other parties or their counsel and reasonable opportunity for inspection of such items shall be permitted within a reasonable time. Any evidence that cannot be scanned into the Electronic Document Management System must be accompanied by a written description of the evidence, the party submitting it, the date submitted, and the protest to which it applies. The parties are encouraged to use the Office of Judges' "Description of Physical Evidence Form".

\* \* \*

§93-1-8. ADMINISTRATIVE HEARING PROCEDURES; GENERALLY.

### 8.1. Right to Administrative Hearing

Except for the expedited issues identified in W. Va. Code §23-4-1c(a)(3) and section 9 [93-1-9 et seq.] of this rule, *any party to a protest shall, upon timely request, have a right to a hearing concerning any issue of fact or law upon which the claim administrator has made a decision within the meaning of W. Va. Code §23-5-1(b), and upon the timely filing of a protest.* (Emphasis added).

It is undeniable that these rules, along with others not cited afforded Mr. Ruble the full and fair opportunity "to present evidence and legal argument" in support of his position as to causation.

Finally, the procedures governing the workers' compensation matter provided Mr. Ruble a "fair opportunity to rebut evidence and argument by opposing parties." In addition to the provisions already citied, the rules for operation of the workers' compensation proceeding provided ample opportunity for Mr. Ruble to rebut evidence regarding the cause of his illness, expressly providing:

> 7.2.  Rules
>
> C.  Rebuttal Evidence
>
> The Office of Judges recognizes that the parties may, at times, need to offer rebuttal evidence.  Rebuttal evidence may, and should, be filed during any Time Frame or extension.  In cases where evidence is filed at or near the end of the existing Time Frame, an extension may be granted in accordance with the rules controlling the extension of Time Frames.  Rebuttal may take the form of, but not be limited to, cross-examination of witness, examination of the claimant, or filing of expert reports; provided, that additional examination of the claimant may not exceed the limit on the number of examinations that may be obtained under the provisions of subsection 7.4 [93-1-7.4] of this Rule.
>
> * * *
>
> 7.4.  Examinations and evaluations
>
> C.  Requests for Cross-examination
>
> A request to cross-examine the author of a report shall be made promptly in writing to the party offering the report.

D. Production of Expert Witness for Cross-examination

When cross-examination of a reporting expert is properly requested, it shall be the responsibility of the party offering the report to arrange for the appearance of the witness for cross-examination. . .

* * *

8.3. Administrative Hearing Procedure

A. Testimony

All testimony shall be taken under oath or affirmation.

B. Cross-examination

All parties shall be given reasonable latitude in cross-examining witnesses. Cross-examination must take place in any time period set forth in a Time Frame Order.

C. Objections

An Administrative Law Judge or Hearing Examiner shall rule upon all objections to the evidence or testimony presented at the hearing or offered by deposition, taking into consideration the apparent reliability of evidence, and the basis of knowledge of a witness. All objections shall be noted in the transcript of the hearing or deposition. Exceptions to a ruling on such objections shall be automatic. Oral argument and citation of authority by the parties in support of, or opposition to, objections may be required. In the event of adverse rulings the record may be preserved for appeal by written proffer or, at the discretion of the Administrative Law Judge or Hearing Examiner, by an oral vouching of the record.

* * *

8.4. Witnesses; Subpoenas and Fees

C. Right to Examine or Cross-Examine Witnesses

Each party is entitled to compel the attendance at a hearing of any witness whose testimony may be relevant and

> material, except a party is not entitled to the presence of a witness who is deemed unavailable. . .

In light of the numerous provisions within these rules that safeguarded Mr. Ruble's right to notice, the ability to present evidence in support of his position and the ability to rebut evidence presented by his employer, such process was not "fundamentally poor, cursory, or unfair" as envisioned by the Supreme Court in *B&B Hardware*.

In addition, the decision in *Miller* requires litigants such as Petitioners to have "a full and fair *opportunity* to litigate the issue in the prior proceeding," but does not require that they, in fact, have exercised such opportunity. Accordingly, the operative question is not what evidence was, in fact, adduced during such proceeding, but whether Mr. Ruble had a full and fair *opportunity* to litigate his claim of causation. I believe he was provided such opportunity.[6] During the workers' compensation proceedings, Mr. Ruble was represented by counsel, presented his own testimony, provided medical records and reports as well as articles from medical journals. In addition, Mr. Ruble appealed both the decision of the claims administrator and the OOJ. A review of the detailed, twenty-five page decision of the OOJ provides a list of numerous documents that were submitted and considered by the OOJ.

---

[6] In addition to those portions of the rules governing proceedings before the OOJ that are expressly cited herein, there are additional rules that govern other steps and procedures, including discovery, interrogatories, subpoena power, and exchange of evidence, that I believe further provided Mr. Ruble a full and fair opportunity to litigate the issue of causation. In addition, 102 C.S.R. § 1 et seq., provides similar procedural rules for proceedings before the Board, which is the entity to which Mr. Ruble appealed the adverse determination by the OOJ.

I am further unpersuaded by Mr. Ruble's argument, which the majority apparently found compelling, that the nature of a workers' compensation claim, and the limited monetary remedies that may be available in such claim, bars the application of collateral estoppel to the determinations made in such action. Again, the holding in *Miller* asks us to determine whether Mr. Ruble had the *opportunity* to fully and fairly litigate his claim, and thus, whether he failed to take advantage of that opportunity, because he felt that spending money on discovery and experts might have consumed or exceeded his potential recovery, is not persuasive in this analysis. As the Superior Court of Pennsylvania held, in *Frederick v. Action Tire Co.*, 744 A.2d 762 (1999):

> Frederick also contends evidence favorable to him was not presented in the workers' compensation proceedings, specifically, the testimony of Drs. Gary Smith, Milton Klein, Edward James and William Welch, as well as certain expert testimony regarding the severity of the impact. We reject the contention the lack of such testimony denied him a full and fair opportunity to litigate his claim. He had ample opportunity to depose these witnesses and to present their testimony (along with supporting medical records) at the many hearings held on his claim. His unsupported assertion that his attorney had no economic incentive to take these depositions is insufficient to avoid application of collateral estoppel.

*Id.* at 768. Here, there was copious medical evidence on which the claims administrator, the OOJ and the Board relied in rejecting Mr. Ruble's claim. The fact that Mr. Ruble did not believe it to be economically advantageous to provide additional evidence to rebut that evidence or to take additional testimony does not support his position that collateral estoppel should not apply.

13

Finally, the majority gives weight to the fact that the Respondents were not parties to the workers' compensation action and, therefore, the application of collateral estoppel would be in a "third-party" tort action. However, the party against which the issue preclusion is sought here is not a third-party but, indeed, is the plaintiff or petitioner in both actions. In *Miller*, we expressly found that the fourth factor, namely whether the party had a "full and fair opportunity" to litigate the issue in the prior action, applied to "the party against whom the doctrine of collateral estoppel is raised." In this case, there is no question that the doctrine is being raised against Mr. Ruble in order to preclude him from relitigating the issue of causation of his medical condition. Accordingly, the fact that the tort action is *against* third parties who were not part of the original workers' compensation action does not bar the application of collateral estoppel.

Moreover, various jurisdictions have expressly applied collateral estoppel to prevent relitigating claims against third-party defendants. *See Young v. Gorski*, 2004 WL 540944 (Ohio Ct. App. Mar. 19, 2004); *Frederick v. Action Tire Co.*, 744 A.2d 762 (Pa. Super. Ct. 1999); *Duncan v. Lone Star Indus. Inc.*, 2019 WL 3997290 (E.D. Mo. Aug. 23, 2019). Therefore, because Mr. Ruble is the party against whom collateral estoppel is sought to be applied, the fact that the Respondents were not parties to workers' compensation matter would preclude the application of collateral estoppel as determined by the circuit court.

Aside from the specific facts of this case, I am concerned with the potential precedential effect of the majority's holding that the procedures governing administrative

14

tribunals, in this case the workers compensation OOJ and the Board, did not provide Mr. Ruble a full and fair opportunity to litigate the issue of causation. Numerous administrative agencies conduct hearings and proceedings governed by their own specific procedural rules. The majority's findings that such procedures here do not provide a full and fair opportunity to parties to litigate specific issues could unjustly call into question the applicability of collateral estoppel in relation to a myriad of other administrative proceedings and agencies.

As the Supreme Court held in *B&B Hardware*:

Both this Court's cases and the Restatement make clear that issue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies. Indeed, this Court has explained that because the principle of issue preclusion was so "well established" at common law, in those situations in which Congress has authorized agencies to resolve disputes, "courts may take it as given that Congress has legislated with the expectation that the principle [of issue preclusion] will apply except when a statutory purpose to the contrary is evident." This reflects the Court's longstanding view that " '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.' "

*B&B Hardware*, 575 U.S. at 148, 135 S.Ct. at 1303 (internal citations omitted). Here, as in *B&B Hardware*, the OOJ and the Board were acting in a judicial or quasi-judicial capacity in accordance with rules promulgated for conducting such proceedings. I believe

15

those rules, while different from rules governing proceedings in a circuit court, adequately safeguard the parties right to a full and fair opportunity to litigate the issues in dispute.

In summary, Mr. Ruble has alleged an occupational disease resulting from his exposure to toxic chemicals. He failed to prove in his workers' compensation claim that the medical conditions he allegedly suffered were caused by chemical exposure during his employment at the Lesage facility. After learning that he had received an adverse causation determination from the Board, he voluntarily dismissed his employers from his civil action and sought to proceed against the third-party chemical companies for causing the same medical conditions that were alleged in his workers' compensation claim. I believe that the doctrine of collateral estoppel bars Petitioners from relitigating the issue of causation in their civil action against Respondents.

For the reasons stated above, I believe that the circuit court correctly determined that Petitioners were collaterally estopped from litigating the issue of causation for their alleged injuries, and I respectfully dissent from the majority's reversal of the circuit court's order dismissing the Petitioner's action in this matter.