NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE:  LF CENTENNIAL LIMITED, FORMERLY WHALEN FURNITURE MANUFACTURING, INC.,**
*Appellant*

---

2015-1931

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,169.

---

Decided:  June 29, 2016

---

JOSHUA A. STOCKWELL, Barlow, Josephs & Holmes, Ltd., Providence, RI, argued for appellant. Also represented by STEPHEN HOLMES.

MICHAEL SUMNER FORMAN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor Michelle K. Lee. Also represented by THOMAS W. KRAUSE, SCOTT WEIDENFELLER, SARAH E. CRAVEN.

---

Before NEWMAN, SCHALL, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

LF Centennial Ltd. owns U.S. Patent No. 8,079,311, which describes and claims a kit for support and mounting of a television. The kit provides a user three different configurations, each of which uses a spine on a console component for structural support. In an earlier infringement suit filed against Bell'O International Corp. in the Southern District of California, LF Centennial (more precisely, its predecessor Whalen Furniture Manufacturing, Inc.) successfully proposed constructions of the claim terms "first short spine" and "second long spine" in the '311 patent, but it did not propose a construction of "spine," even as part of the two construed phrases that include the word. That case settled without any infringement or invalidity determinations.

In the present inter partes reexamination proceeding (initiated by Bell'O while the California case was alive), the examiner rejected claims 1–16 of the '311 patent for anticipation or obviousness. On appeal, the Patent Trial and Appeal Board adopted a construction of "first short spine" that, in part, borrowed from the construction adopted in the related district-court litigation and, in part, added a clarifier that a spine need not be "located at the center of the back" of the console or be "distinct from a leg or side panel of the console." *Bell'O Int'l Corp. v. Whalen Furniture Mfg., Inc.*, 2014 WL 4925619, at *5 (PTAB Sept. 30, 2014). Based on that construction, the Board sustained two of the examiner's rejections cancelling claims 1, 11, 12, and 14–16. Because we agree with LF Centennial that the Board erred in its construction by adding the clarifier, we reverse those rejections.

BACKGROUND

The '311 patent, entitled "Television Support and Mounting Kit," discloses a set of pieces for mounting a TV in three different configurations involving a console. '311 patent, Abstract. As the specification explains, in the first configuration, the TV is placed on the top shelf of a

multiple-shelf console. In the second, the TV is attached to a spine that extends above the top shelf of the console. And in the third, the TV is mounted on a wall above the console. All three configurations use a spine that provides support for the shelves, the first and third calling for a short spine and the second calling for a long spine. *Id.*, col. 2, lines 3–44; *id.*, col. 3, lines 41–55.

Figure 1 shows the positioning of the long spine 22 in an embodiment of the second configuration:



FIGURE 1

Independent claim 1 recites the spine (either short or long) and its use in the three mounting configurations:

1. A flat panel television console and support kit for use in a plurality of different user assembled configurations comprising:

a flat panel television console assembly including upper and lower horizontally extending shelf

supports, and upper and lower shelves respectively carried on said upper and lower shelf supports, said flat panel television console assembly being capable of supporting a flat panel television on an upper surface of said upper shelf;

a first short spine having a height which extends from a floor to said upper shelf support, said first short spine forming a structural component of said console assembly when said first short spine is secured to a said upper and lower shelf supports of said console assembly;

a second long spine, having a height which extends from a floor to said upper surface of said upper shelf and further extends above said upper surface of said supper [sic] shelf terminating in an upper end which provides an elevated support for a flat panel television, said second long spine forming a structural component of said console assembly when said second long spine is secured to said console assembly;

a cantilevered arm extending from said upper end of said second long spine;

a flat panel television mounting assembly on a terminal end of said cantilevered arm; and

an XYZ flat panel television mounting frame,

said kit being useful in a first configuration wherein said first short spine is connected to said upper and lower shelf supports to transfer weight from the upper and lower shelf supports to the floor as a structural component of said console assembly, and a flat panel television is supported on said upper surface of said upper shelf of said console assembly,

said kit being useful in a second configuration wherein a flat panel television is secured to said XYZ frame and said XYZ frame is secured to a wall above said console assembly, and further wherein said first spine is connected to said upper and lower shelf supports as a structural component of said console assembly,

said kit being useful in a third configuration wherein a flat panel television is secured to said XYZ flat panel television mounting frame, and said XYZ flat panel television mounting frame is secured to said flat panel television mounting assembly at said upper end of said second long spine, and said second long spine is secured to said console assembly to support said flat panel television above said console assembly.

*Id.*, col. 7, line 7, through col. 8, line 3. Dependent claims add a tilting or pivoting mechanism for the TV and hollowed spines with openings to receive cables. *See id.*, col. 8, lines 4–33 (claims 2–16).

In December 2011, LF Centennial's predecessor Whalen (which we will call LF Centennial) sued Bell'O and three other defendants in four separate actions in the Southern District of California, alleging infringement of the '311 patent. In December 2012, the district court construed disputed claim terms for all of the actions in one consolidated order. In particular, it adopted LF Centennial's proposed construction of "first short spine" as "a component, as described in the claim, having a length shorter than the [second long] spine." J.A. 585. There was no construction of "spine" proposed or adopted. In July 2013, after claim construction but before any ruling on infringement or invalidity, the case was settled and therefore dismissed with prejudice.

In September 2012, before the district court issued its claim-construction ruling, Bell'O had filed a request for

inter partes reexamination of claims 1–16 of the '311 patent. *See* 35 U.S.C. § 311 (2012). The examiner granted that request in November 2012. In September 2013, after the court case settled, the examiner rejected the claims for anticipation or obviousness based on various references.

On appeal, the Board began its analysis with claim construction. It first adopted the construction of "first short spine" from the court case. *Bell'O Int'l Corp.*, 2014 WL 4925619, at *5. It then added that the short spine need not be "located at the center of the back" of the console or "distinct from a leg or side panel of the console." *Id.* Although recognizing that Figure 1 depicts the spine as separate from a side panel and located at the center and back of the console, the Board explained that no explicit claim or specification language required importing those characteristics into the claims. *See id.*

Based on that construction, the Board upheld an anticipation rejection (of claims 1, 11, and 14) and an obviousness rejection (of claims 12, 15, and 16), but reversed the other rejections. It found the required "short spine" in U.S. Patent Application Publication No. US 2007/0246629 to Saxton et al.—specifically in the unlabeled curved legs in Figure 8:



FIG. 8

The Board found claims 1, 11, and 14 anticipated by Saxton. As to claims 12, 15, and 16, the Board upheld the obviousness rejection over Saxton combined with U.S. Patent No. 7,178,775 to Pfister et al., because Pfister discloses a tilting mechanism required by those claims.[1]

LF Centennial appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

We review de novo the Board's determination of the broadest reasonable interpretation of the claim language where, as here, it is not based on any outside-the-patent understandings of technical language or other facts. *In re Varma*, 816 F.3d 1352, 1359 (Fed. Cir. 2016); *see Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837–38, 841–42 (2015). We conclude, based on the ordinary-language meaning and the specification's contrast between a spine and side panels, that the Board's construction allowing the spine to be a leg or side panel of the console is unreasonably broad.

Claim 1 recites the relative heights of the first short spine and the second long spine, and says that each "form[s] a structural component of [the] console assembly when [it] is secured to . . . said console assembly." '311 patent, col. 7, lines 16–28. It does not further elaborate on "spine." But, as LF Centennial points out, the word "spine" in its relevant ordinary non-technical meaning for three-dimensional structures refers to a support structure that is generally central and at the back. *See, e.g.*, Random House Webster's Unabridged Dictionary 1838 (2d ed.

---

[1] The PTO does not defend the rejections of claims 11 and 12; it notes that the Board made an error in grouping the claims for analysis. We need not address that error, because we reverse the rejections on an independent ground.

2001) (defining "spine" as "the spinal or vertebral column; backbone" or "any backbonelike part"). That meaning distinguishes it from a side panel or leg, and the intrinsic record in this case confirms that distinction.

In particular, the specification plainly distinguishes between the spine and the side panels. The patent figures show the spine as a piece distinct from the side panels, and assign those components different figure numbers. *See, e.g.*, '311 patent, fig. 1 (depicting spine 22 and side panels 48 and 50); *id.*, fig. 3 (depicting short spine 62 and side panels 48 and 50—with corresponding upper members 52 and lower members 58). Figure 4 displays all of the structural components of the kit, showing (separately) short spine 62, long spine 22, and side panels 50 and 52. *See id.*, fig. 4; *id.*, col. 5, lines 36–38, 42–43. And the specification's detailed description confirms that the spine and side panels cannot be equivalent. Referring to Figure 1, it states that the "[s]pine 22, in combination with the side panels 48 and 50, supports the TV 12 and the shelf supports 24, 26 and 28." *Id.*, col. 5, lines 5–6. That language clearly treats the spine and side panels as separate components in saying that the spine is used "in combination with" the side panels to provide support. In the same fashion, the discussion accompanying Figure 3 explains that "the short spine 62 . . . is bolted to the shelf supports 54, 56 and 60 and so cooperates with the side panels 48 and 50 to support weight carried on the upper shelves to the lower shelf support 60 and the floor on which the console rests." *Id.*, col. 5, lines 31–35. Again, the spine and side panels are separate components that "cooperate with" each other to provide support. We have not found or been pointed to a use of the word "spine" in the patent that contradicts or undermines the clear distinction between the components.

To support the Board's contrary construction, the Director of the Patent and Trademark Office, as intervenor, asks us to hold LF Centennial to the construction

that it proposed—and the district court adopted—in the prior litigation against Bell'O. But that construction is not in tension with what LF Centennial proposes here: it says nothing that contradicts the relevant ordinary non-technical meaning of "spine" or, specifically, its distinction from side panels or legs. In the district court, LF Centennial proposed only that "first short spine" means "[a] component, as described in the claim, having a length shorter than the [second long] spine," J.A. 561, and that "second long spine" means "a component, as described in the claim, having a length longer than the first short spine," J.A. 563. The defendants, in turn, argued that the first short spine and second long spine cannot be used together and that the first short spine must be removable. As the district court explained, the parties' dispute centered on "whether the two different spines described in the claims can be used together." J.A. 582. Nothing supporting the Board here was said about the location of the spines, in relation to the console as a whole or to the side panels.

Nor did any post-claim-construction ruling in the court case turn on any implicit view of "spine" different from what LF Centennial urges here. In this circumstance, there could be no basis for judicial estoppel, which generally prevents a party from advancing a position that is "clearly inconsistent" with an earlier position on which it succeeded. *See Zedner v. United States*, 547 U.S. 489, 504 (2006); *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Similarly, there could be no basis for issue preclusion, which is limited to issues that were "actually litigated" and whose resolution was "essential" to the outcome in the first round of litigation. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); Restatement (Second) of Judgments § 27 (1982).

The Director also points to the specification's description of a short spine in one embodiment as reaching from

the ground to the top of the console. *See* '311 patent, col. 2, lines 6–9 (short spine "extends between the floor or lowest shelf support to the level of the upper most shelf support"). Because a side panel does the same, the Director suggests, a side panel can be a spine. That suggestion is fallacious: it employs a version of the fallacy of the undistributed middle, under which the two statements, "a dog is a four-legged pet" and "a cat is a four-legged pet," are asserted to give rise to the inference that a dog is a cat. A common characteristic of a spine and a side panel does not allow a conclusion that one can be the other.

Under the appropriate construction (which applies to all of the claims), the Board's anticipation and obviousness rejections must be reversed. The challenger Bell'O, the examiner, and the Board pointed only to the curved legs or side panels shown in Figure 8 of Saxton as constituting the disclosure of a "short spine." Those components were merely identified as the "short spines," without elaboration as to Saxton's teaching to a relevant skilled artisan. Because we hold that such components cannot be considered "spines" under the '311 patent, there has been no showing of a disclosure or teaching of a "first short spine" in the prior art of record. We reverse the anticipation and obviousness rejections based on Saxton and Pfister.

## CONCLUSION

For the foregoing reasons, we reverse the Board's rejections of claims 1, 11, 12, and 14–16.

**REVERSED**