# United States Court of Appeals for the Federal Circuit

———————

**POWER INTEGRATIONS, INC.,**
*Appellant*

**v.**

**SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, DBA ON SEMICONDUCTOR,**
*Appellee*

———————

2018-1607

———————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2016-00809.

———————

Decided: June 13, 2019

———————

FRANK SCHERKENBACH, Fish & Richardson, PC, Boston, MA, argued for appellant. Also represented by MICHAEL R. HEADLEY, HOWARD G. POLLACK, NEIL WARREN, Redwood City, CA; JOHN WINSTON THORNBURGH, San Diego, CA.

MICHAEL HAWES, Baker Botts, LLP, Houston, TX, argued for appellee. Also represented by ROGER FULGHUM; BRETT J. THOMPSEN, Austin, TX; LAUREN J. DREYER, Washington, DC.

———————

Before PROST, *Chief Judge,* REYNA and STOLL,
*Circuit Judges.*

PROST, *Chief Judge.*

Semiconductor Components Industries, LLC, doing business as ON Semiconductor ("ON"), petitioned for *inter partes* review ("IPR") of several claims of U.S. Patent No. 6,212,079 ("the '079 patent"). The Patent Trial and Appeal Board ("Board") determined that the IPR was not time-barred by 35 U.S.C. § 315(b) and that the challenged claims were invalid. *ON Semiconductor Corp. v. Power Integrations, Inc.*, No. IPR2016-00809, Paper 67 (P.T.A.B. Sept. 22, 2017). Power Integrations, Inc. ("Power Integrations") appeals the Board's decision.

For the reasons explained below, we hold that this IPR is time-barred under § 315(b). We therefore vacate the Board's final written decision and remand with instructions to dismiss IPR2016-00809.

I

A

Power Integrations owns the '079 patent, which relates to switched mode power supplies. '079 patent col. 1 ll. 7, 11–26. These power supplies function to convert high-voltage alternating current into low-voltage direct current to power electronic devices. *Id.* The '079 patent discloses a "switching regulator" to help conserve power and maintain output regulation at low loads without skipping cycles. *Id.* col. 1 ln. 65–col. 2 ln. 35.

B

In 2005 and 2006, Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation (collectively, "Fairchild") challenged several claims of the '079 patent in two *ex parte* reexaminations, which were consolidated. J.A. 87. On May 5, 2009, the U.S. Patent and Trademark

Office ("PTO") confirmed the validity of the challenged claims as amended and 22 new claims. J.A. 86–92.

Then, on November 4, 2009, Power Integrations sued Fairchild for infringement of the '079 patent and two other patents. J.A. 1103–12. Fairchild was served with the complaint for infringement on November 6, 2009. In March 2014, a jury found claims 31, 34, 38, and 42 of the '079 patent not invalid and infringed. J.A. 1033–35. The jury awarded damages of $105 million. J.A. 1035. Following our decision in *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308 (Fed. Cir. 2014), the district granted Fairchild's motion for a new trial on damages for infringement of the '079 patent. In the second damages trial in December 2015, a jury applied the entire market value rule and awarded damages of $139.8 million. J.A. 1038–39.

Fairchild appealed, and we affirmed the jury's verdict of infringement of the '079 patent. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 974 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1265 (2019). We concluded, however, that the entire market value rule could not be used to calculate damages in this case, vacated the damages award, and remanded for further proceedings. *Id.* at 977–80. On May 6, 2019, the district court granted the parties' joint motion to release and return Fairchild's posted bond of $146,480,598 and any accrued interest. To date, there has been no further action in the district court proceeding.

C

On November 18, 2015, ON entered into an agreement to merge with Fairchild. J.A. 143–44. But the merger did not close immediately. *See* J.A. 143. Several months later, while the merger was still pending, ON filed a petition for IPR challenging claims 31, 32, 34, 38, 39, and 42 of the '079

patent.[1]  J.A. 137–202.  This petition for IPR was filed on March 29, 2016, more than one year after Fairchild was served with the complaint alleging infringement of the '079 patent.  The Fairchild-ON merger closed several months later, on September 19, 2016.  J.A. 281–82.  The Board instituted the IPR four days after that, on September 23, 2016.  J.A. 103–31.

Power Integrations argued in both its Patent Owner Preliminary Response and its Patent Owner Response that this IPR should be time-barred under § 315(b) because ON and Fairchild were in privity at the time of filing and Fairchild had been served with a complaint for infringement more than one year before the petition was filed. J.A. 218–20, 369–72.  The Board rejected this argument in its institution decision and again in its final written decision.

In its institution decision, the Board focused its § 315(b) analysis on whether ON and Fairchild were in privity when Fairchild filed its petition.  Power Integrations argued that the existence of a merger agreement and a confidentiality agreement stating that ON and Fairchild "share[d] a common legal and commercial interest" and "are or may become joint defendants in proceedings" showed that they had a common interest in annulling the jury's $139.8 million damages award against Fairchild for infringing the '079 patent.  J.A. 218–19.  ON had disclosed the merger agreement in its IPR petition but noted that the merger was not closed at the time it filed the petition and that the merger was dependent on several uncertain conditions occurring.  J.A. 143.  ON also asserted that Fairchild

---

[1]  ON also filed two additional petitions for IPR against the '079 patent and nine petitions for IPR against five of Power Integrations' other patents.  J.A. 277–78.  ON filed all of these petitions after its merger with Fairchild was announced but before it closed.

had no role in the decision to file the IPR petition, had no control over the content of the IPR petition, and did not pay for the IPR petition. J.A. 143–44. The Board determined that there was insufficient evidence of record to establish control and therefore insufficient evidence to establish privity between Fairchild and ON at the time the petition was filed. J.A. 113–14. The Board thus held that the IPR was not time-barred by § 315(b) and instituted the IPR. J.A. 115, 130.

After institution, Power Integrations requested authorization to file a motion under 37 C.F.R. § 42.51(b)(2) for additional discovery on the relationship between ON and Fairchild. J.A. 289–90. ON objected to providing the additional discovery. J.A. 1903. The Board applied the factors enumerated in *Garmin International, Inc. v. Cuozzo Speed Technologies LLC*, No. IPR2012-00001, Paper 26 at 6–7 (P.T.A.B. Mar. 5, 2013), which govern requests for additional discovery, and denied Power Integrations' request for authorization to file a motion for additional discovery. J.A. 290–92. In denying the request, the Board determined that "Patent Owner has expressed no more than a suspicion (mere speculation) that such evidence exists and would be uncovered by additional discovery" and therefore had not met the first *Garmin* factor. J.A. 292. The Board also concluded that even if Power Integrations had established the first *Garmin* factor, it would not grant the request for additional discovery because the requests were overly broad. *Id.*

In its Patent Owner Response, Power Integrations again argued that ON was in privity with Fairchild (an undisputedly time-barred party) at the time ON filed the petition. J.A. 369–72. The Board rejected this argument for the same reasons it had rejected it in its institution decision. J.A. 10–13. It again focused on the issue of control and held that there was insufficient evidence of record to show that Fairchild exercised, or could have exercised, control over the IPR petition. *Id.*

Power Integrations next asserted that ON was acting as Fairchild's proxy in filing the IPR petition. J.A. 369–72. The Board rejected this argument as well, finding that Power Integrations offered mere speculation, not evidence, that ON filed the petition as Fairchild's proxy. J.A. 15–17. The Board determined that ON had its own interest in the IPR proceeding because it had a multi-billion-dollar merger with Fairchild pending at the time it filed the petition. J.A. 17.

Finally, Power Integrations argued that the IPR was time-barred by § 315(b) because Fairchild, a barred party, was an admitted real party in interest ("RPI") before institution. J.A. 364–69. Fairchild became an RPI at least by the time its merger with ON closed—four days before institution. J.A. 364–66. Two other panels of the Board had previously issued nonprecedential decisions holding that only privity relationships up until the time an IPR petition is filed are relevant for purposes of the § 315(b) time-bar. *See ARRIS Grp., Inc. v. TQ Delta LLC*, No. IPR2016-00430, Paper 9 at 6 (P.T.A.B. July 1, 2016); *Synopsys, Inc. v. Mentor Graphics Corp.*, No. IPR2012-00042, Paper 60 at 12 (P.T.A.B. Feb. 19, 2014). The Board in this case similarly held that RPI and privity relationships for purposes of the § 315(b) time-bar are only relevant *up to the date the petition is filed*. J.A. 14–15; *see also* J.A. 11–12 ("Panels of the Board have interpreted [§] 315(b) (and our associated rule 37 C.F.R. § 42.101(b)) to mean that 'it is only privity relationships up until the time a petition is filed that matter.'" (quoting *Synopsys*, No. IPR2012-00042, Paper 60 at 12)). Because the Board determined that Fairchild was not an RPI at the time the petition was filed and rejected Power Integrations' privity and proxy arguments, it concluded that the IPR was not time-barred.

Having found the IPR not time-barred, the Board proceeded to address the merits of the challenged claims and found them unpatentable as obvious over the combination of Japanese Unexamined Patent Application Publication

No. JP H10-323028 ("Oda") and Japanese Unexamined Patent Application Publication No. JP S59-144366 ("Nakamura").

Power Integrations timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II

On appeal, Power Integrations argues that this IPR was time-barred under § 315(b). As our court has previously held, when the PTO institutes an IPR, its rejection of a time-bar challenge under § 315(b) is reviewable. *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364, 1374 (Fed. Cir. 2018) (en banc). Power Integrations argues that privity and RPI relationships arising after filing but before institution should be considered for purposes of the § 315(b) time-bar. Under Power Integrations' interpretation of § 315(b), this IPR would be time-barred because Fairchild, a time-barred party, became an RPI after ON filed this petition but before institution. ON contends that privity and RPI relationships for purposes of § 315(b) should be assessed only at the time the IPR petition is filed and that this IPR is not time-barred.

Making things even more intersting, in a motion filed after the principal briefing in this appeal was completed, ON contended that Power Integrations is precluded from challenging the Board's § 315(b) determination because it did not appeal the Board's final written decision reaching the same § 315(b) determination in another IPR. Power Integrations responded that its challenge is not precluded because an exception to issue preclusion applies in this case.

We begin by addressing ON's motion and then turn to the merits of the appeal.

A

1

In its motion, ON argues that issue preclusion bars Power Integrations' § 315(b) challenge because in a different IPR proceeding (IPR2016-01594) on a different patent (U.S. Patent No. 8,115,457), Power Integrations did not appeal the Board's final written decision, which reached the same § 315(b) determination as the Board decision underlying this appeal. Motion to Preclude Challenge to § 315(b) Determination at 2–4 (Oct. 9, 2018), ECF No. 66 ("Motion").[2] We disagree.

The Supreme Court has long recognized that, under certain conditions, a tribunal's resolution of an issue can preclude the party that lost on that issue from later contesting the same issue in another case:

> [W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (quoting Restatement (Second) of Judgments § 27 (1980)); *see also Worlds Inc. v. Bungie, Inc.*, 903 F.3d 1237, 1247 (Fed. Cir. 2018); *Papst Licensing GmbH &*

---

[2]    The Board issued its final written decision in the IPR underlying this appeal on September 22, 2017, and Power Integrations filed a notice of appeal on February 23, 2018. The Board issued its final written decision in IPR2016-01594 on February 14, 2018. Power Integrations filed a request for rehearing on March 16, 2018, which the Board denied on April 26, 2018. The time to appeal in IPR2016-01594 has since expired.

*Co. KG v. Samsung Elecs. Am., Inc.*, No. 2018-1777, 2019 WL 2219683, at \*4 (Fed. Cir. May 23, 2019).[3]

But this principle is subject to certain well-known exceptions. *B & B Hardware*, 135 S. Ct. at 1303 (referring to exceptions stated in Restatement (Second) of Judgments § 28). As the Supreme Court explained in *B & B Hardware*, the Restatement allows for exceptions to issue preclusion even when the basic requirements for issue preclusion are satisfied. *Id.* at 1303, 1309−10. One of those exceptions is a lack of opportunity *or incentive* to litigate the first action. According to Restatement (Second) of Judgments § 28(5)(c), issue preclusion does not apply when:

> (5) There is a clear and convincing need for a new determination of the issue . . . (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

As the Supreme Court recognized, "[i]ssue preclusion may be inapt if 'the amount in controversy in the first action [was] so small in relation to the amount in controversy

---

[3]    Issue-preclusion principles can apply in a second action even when the first "action" was before an agency. *See B & B Hardware*, 135 S. Ct. at 1302–03 ("[I]ssue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies."). In particular, Board decisions in IPR proceedings can trigger issue preclusion. *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("The TTAB, at issue in *B & B Hardware*, and the Board, in this case, are indistinguishable for preclusion purposes."); *Papst*, 2019 WL 2219683, at \*4.

in the second that preclusion would be plainly unfair.'" *B & B Hardware*, 135 S. Ct. at 1309 (alteration in original) (quoting Restatement (Second) of Judgments § 28 cmt. *j*). As the Court explained: "After all, '[f]ew . . . litigants would spend $50,000 to defend a $5,000 claim." *Id.* (alterations in original) (quoting 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4423 (2d ed. 2002)).

Our court has also recognized that the lack-of-incentive-to-litigate exception may justify not applying issue preclusion, even when the basic requirements are satisfied. *See Kroeger v. U.S. Postal Serv.*, 865 F.2d 235, 239–40 (Fed. Cir. 1988) ("[C]ollateral estoppel has been deemed unfair when the party that would be bound lacked incentive to litigate the issue in the first proceeding because its stake in that proceeding was minimal in comparison with its stake in the second."); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1316 (Fed. Cir. 2015) ("[T]he issue of incentive to litigate arises where '[t]he stakes in the first action may be so small that extensive effort is not reasonable if the risk is limited to the first action.'" (quoting 18 Wright & Miller, *supra*, § 4423)).

2

We agree with ON that Power Integrations raises the same § 315(b) time-bar argument in this appeal that it did in the non-appealed IPR on a different patent, Motion at 5–7, and actually litigated that issue in the non-appealed IPR, *id.* at 7–8. We also agree with ON that the Board's § 315(b) determination in the non-appealed IPR was essential to the final decision in that proceeding. *Id.* at 8–9. We conclude that ON has established the basic requirements for issue preclusion, and Power Integrations has not substantively disputed that conclusion. *See* Power Integrations' Opposition to Motion to Preclude at 6–13 (Oct. 19, 2018), ECF No. 67 ("Opposition").

We conclude, however, that Power Integrations has established that the lack-of-incentive-to-litigate exception applies here and justifies rejecting ON's issue preclusion argument. The disparity in incentives to appeal the § 315(b) issue between the IPR underlying this appeal and the non-appealed IPR are significant. *See* Response at 9–10. Fairchild, which has since merged with ON, has been found to infringe the patent underlying the appealed IPR decision but *not* the patent underlying the non-appealed IPR decision.[4] Indeed, a first jury awarded $105 million in damages and a second jury awarded $139.8 million in damages for infringement of the patent underlying this appeal. Moreover, ON and Fairchild entered their merger agreement one month before the second damages trial, and ON filed the petition for IPR three months after the second damages verdict.[5] In contrast, there is no infringement finding or damages award associated with the patent underlying the non-appealed IPR decision.

We are therefore persuaded by Power Integrations' argument that it had a considerably greater incentive to continue litigating the § 315(b) issue in the IPR underlying this appeal than it had in the non-appealed IPR concerning a patent unassociated with any infringement finding or damages award.[6] S*ee Papst*, 2019 WL 2219683, at *5

---

[4] Fairchild was found not to infringe the '457 patent in a district court action in the District of Delaware. Judgment, *Fairchild Semiconductor Corp. v. Power Integrations Inc.*, No. 1:12-cv-00540-LPS (D. Del. Aug. 7, 2015), ECF No. 427.

[5] We issued a decision vacating the second damages verdict on July 3, 2018, almost a year after the final written decision in this IPR. *See Power Integrations*, 904 F.3d 965.

[6] We have no occasion to consider the preclusive effect of IPR decisions in circumstances different than presented in this case.

(noting that the appellant presented no "legally significant disparity in incentives" to satisfy exception to issue preclusion). Accordingly, we conclude that giving preclusive effect to the Board's § 315(b) determination in the non-appealed IPR is inappropriate in this case. *See Kroeger*, 865 F.2d at 239–40; *Soverain Software*, 778 F.3d at 1316.[7]

Because we find the lack-of-incentive-to-litigate exception to issue preclusion applicable in this case, we do not reach the additional exceptions that Power Integrations contends also apply. *See* Response at 10–13. We hold that issue preclusion does not bar Power Integrations from challenging the Board's § 315(b) determination. ON's Motion is accordingly denied.

## B

We now turn to the merits of this appeal. The primary issue is one of statutory interpretation and one of first impression: whether privity and RPI relationships arising

---

[7] In addition, we note that Power Integrations' judicial efficiency argument is apt here. *See* Response at 9–10. We decline to apply issue preclusion, especially when a recognized exception is satisfied, in a way that would require Power Integrations to have appealed from every adverse IPR decision, even where there is little or no incentive, to preserve its ability to challenge a legal issue like the Board's interpretation of § 315(b). *See, e.g., Ferrell v. Pierce*, 785 F.2d 1372, 1385 (7th Cir. 1986) ("[T]he government may disagree with a court's interpretation of a decree yet believe that the ruling is too insignificant to warrant appeal. If we were to hold that the government is then foreclosed from challenging the judicial interpretation in a later case . . . the government would be forced to appeal every adverse ruling, even the ones it can live with, merely to protect itself. We decline to encourage such unnecessary litigation.").

after filing but before institution should be considered for purposes of the § 315(b) time-bar.

1

Statutory interpretation is an issue of law that we review de novo. *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016). "In statutory construction, we begin 'with the language of the statute.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). Our "first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart*, 534 U.S. at 450 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

2

35 U.S.C. § 315 governs the relationship between IPRs and other proceedings. Section 315(b) reads:

**(b) Patent Owner's Action.**—An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

ON argues that privy and RPI relationships for purposes of the § 315(b) time-bar should be assessed only at filing, while Power Integrations argues that privity and RPI relationships arising after filing but before institution

should also be considered. While the parties argue for opposing interpretations of when privity and RPI relationships should be assessed, they both contend that the statute is clear and unambiguous in favor of their opposing interpretations. *See* Appellant's Br. 27; Appellee's Br. 32–34, 37.

We agree with Power Integrations that the best reading of § 315(b) requires consideration of privity and RPI relationships arising after filing but before institution.[8]

Turning to the statutory language, § 315(b) states that an IPR "*may not be instituted*" if a stated condition is true. 35 U.S.C. § 315(b) (emphasis added). That condition is "if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." *Id.* The Board's decision under § 315(b) is whether to institute or not. The condition precedent for this decision is whether a time-barred party (a party that has been served with a complaint alleging infringement of the patent more than one year before the IPR was filed) is the petitioner, real party in interest, or privy of the petitioner. In other words, the statute specifically precludes *institution*, not filing. When the Board finds that an IPR is barred under § 315(b), it denies institution. It does not reject the petitioner's filing. The focus of § 315(b) is on institution. The language of the statute, in our view, makes privity and RPI relationships that may arise after filing but before institution relevant to the § 315(b) time-bar analysis.

This reading of the statutory language is consistent with our prior cases, which have characterized the § 315(b) time-bar "[a]s a statutory limit on the Director's ability to

---

[8]    We do not address the impact of a change in RPI, privity, or ownership occurring after institution.

*institute* IPR." *Wi-Fi One*, 878 F.3d at 1374 (emphasis added); *see also id.* at 1373 ("[Section] 315(b) controls the Director's authority to institute IPR . . . ."); *id.* at 1374 ("It sets limits on the Director's statutory authority to institute . . . ."); *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1365 (Fed. Cir. 2018) (Reyna, J., concurring) ("Section 315(b) is the gatekeeper to deny institution of petitions from time barred petitioners, their real parties in interest, and their privies."), *cert. denied*, 139 S. Ct. 1366 (2019).

Our reading of the statute is also consistent with common law preclusion principles. The statutory terms "real party in interest" and "privy" are not defined in Title 35. However, they are well-established common law terms. *See Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1335 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 826 (2019); *WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1317 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1216 (2019). Where Congress "uses a common-law term in a statute, we assume the 'term . . . comes with a common law meaning, absent anything pointing another way.'" *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 101 (2011) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58 (2007)). Thus, as we have previously recognized, "[t]he use of the familiar common law terms 'privy' and 'real party in interest' indicate that Congress intended to adopt common law principles to govern the scope of the section 315(b) one-year bar." *Wi-Fi One*, 887 F.3d at 1335. As we stated in *Western-Geco*, "[t]he legislative history [of the Leahy-Smith America Invents Act ("AIA")] thus lends support to the conclusion that 'privity' in § 315(b) should be given its common law meaning." 889 F.3d at 1318 (citing 154 Cong. Rec. S9987 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl) ("The concept of privity, of course, is borrowed from the common law of judgments.")). We therefore look to common law preclusion principles for guidance.

"The basic premise of preclusion is that parties to a prior action are bound and nonparties are not bound." 18A Wright & Miller, *supra*, § 4449 (3d ed. 2019). However, the general rule against nonparty preclusion is subject to several exceptions. *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008). Early definitions of privity were narrow. *See* 18A Wright & Miller, *supra*, § 4449. But over time, the common law term "privity" became "used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Taylor*, 553 U.S. at 894 n.8. The legislative history of the AIA recognized that the term "privity" has acquired an expanded meaning that is focused on the "practical situation." *See* 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) ("[P]rivity is an equitable rule that takes into account the 'practical situation,' and should extend to parties to transactions and other activities relating to the property in question.").

Common law preclusion cases suggest that preclusion can apply based on privity arising after a complaint is filed. "Courts have repeatedly found privity where, *after a suit begins*, a nonparty acquires assets of a defendant-infringer." *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1583 (Fed. Cir. 1986) (emphasis added), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc). As we explained in *Kloster*, the supporting rationale is that:

> [i]f a third party may thus come into the acquisition of rights involved in pending litigation without being bound by the final judgment, and require a suit de novo in order to bind him, he might, pending that suit, alienate that right to another with the same result, and a final decree bearing fruit could never be reached.

793 F.2d at 1583 (quoting *J.R. Clark Co. v. Jones & Laughlin Steel Corp.*, 288 F.2d 279, 280 (7th Cir. 1961)). Thus,

common law principles lend support to our reading of the statutory text that privity relationships arising after an IPR is filed but before institution should be considered in the § 315(b) time-bar analysis.

Our view is further supported by the statute's purpose, as demonstrated by its language. As we explained in *Applications in Internet Time*, in drafting § 315(b), Congress "chose language that bars petitions where proxies or privies would *benefit* from an instituted IPR, even where the petitioning party might separately have its own interest in initiating an IPR." 897 F.3d at 1347 (emphasis added); *see also id.* at 1348 (stating that "the real-party-in-interest inquiry . . . bear[s] in mind who will *benefit* from having those claims canceled or invalidated" (emphasis added)). Against this backdrop, we decline to construe § 315(b) in a way that would have the Board, when deciding whether to institute, ignore the existence of RPIs or privies who would benefit from having an IPR instituted simply because they were not RPIs or privies when the petition was filed.

3

ON's arguments for limiting evaluation of privity and RPI relationships to only the time of filing are unpersuasive. ON's primary statutory interpretation argument is that the statutory language "tethers the analysis of any potential real party-in-interest and privy issues to the petition's filing date" because of its focus on when "the petition requesting the proceeding *is filed*." Appellee Br. 32–33. But the "is filed" language in § 315(b) does not dictate finally determining RPI or privity relationships at filing. Rather, the "is filed" language merely marks the end of the one-year window that the petitioner has to file a petition for IPR. *See Click-To-Call Techs., LP v. Ingenio, Inc.*, 899 F.3d 1321, 1330 (Fed. Cir. 2018) (en banc in part) (stating that § 315(b) "unambiguously precludes the Director from instituting an IPR if the petition seeking institution is filed more than one year after the petitioner, real party in

interest, or privy of the petitioner 'is served with a complaint' alleging patent infringement'" (quoting § 315(b))).

ON argues that *Wi-Fi One* supports its statutory interpretation because we stated that "[n]othing in § 315(b) sets up a two-stage process for addressing the time bar: the time-bar determination may be decided fully and finally at the institution stage." 878 F.3d at 1373; Appellee's Br. 34–35. We disagree. If anything, this statement bolsters the reading of § 315(b) that we set forth here. The "two stage[s]" referred to in *Wi-Fi One* are pre-institution and post-institution. In *Wi-Fi One*, we contrasted § 314(a), which concerns the pre-institution "preliminary" determination of whether the petitioner has a "reasonable likelihood" of prevailing on the issue of patentability, with § 315(b), which concerns the time-bar determination. *See* 878 F.3d at 1372–73. We concluded that § 314(a), while considered preliminarily pre-institution, is considered fully and decided finally post-institution and that, in contrast, the § 315(b) time-bar can be "decided fully and finally at the institution stage." *See id.* Our use of "at the institution stage" rather than "at filing" in *Wi-Fi One* is entirely consistent with our holding here that privity and RPI relationships arising after filing but before institution may time-bar institution under § 315(b).

ON also raises several practical concerns with our reading of the statute. These practical concerns are unavailing and do not to justify departing from the most natural reading of the statute. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2118 (2018). First, ON contends that assessing privity and RPI relationships arising after filing but before institution creates a "moving target" because the Board can make its institution decision anytime within three months after the Patent Owner Preliminary Response is filed or is due. Appellee's Br. 36–37 (citing 35 U.S.C. § 314(b)). ON notes that the Board could possibly reach a different outcome on whether the IPR is time-barred depending on when it makes its institution decision relative to events

affecting the relationship between the petitioner and other entities. ON argues instead that "the filing date is the more appropriate date to analyze § 315(b) because it is fixed, giving the Board and the parties a known date for evaluating the time-bar issue." *See* Appellee's Br. 36–37.

At the outset, we disagree that the statutorily mandated three-month window for the Board to make an institution decision following the Patent Owner Response is too unpredictable for the parties to evaluate and address a time-bar issue. While the exact date that the Board institutes within the three-month window is beyond the petitioner's control, the terms and timeline of a possible merger are not. We also disagree with ON's position that it would be difficult or burdensome for the Board to assess RPI and privity relationships arising after filing but before institution. Notably, the petitioner is required to identify all real parties in interest in its petition, 35 U.S.C. § 312(a)(2), and is under a continuing obligation to update the Board within 21 days of any change to the RPI, 37 C.F.R. § 42.8(a)(3), (b)(1). This continuing obligation to provide notice would seem to make little sense unless it was relevant to the ongoing proceedings. Finally, while federal courts apply a "time-of-filing" rule for assessing jurisdiction at the time a complaint is filed, we decline to adopt a similar "time-of-filing" rule for assessing the time-bar of § 315(b). *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004). Section 315(b) is not about federal-court jurisdiction; it is about preclusion in an agency proceeding. Thus, common law preclusion principles rather than federal-court juridical rules inform our reading of § 315(b).

We have considered the parties' remaining statutory interpretation arguments and find them unpersuasive.

4

ON raises the issue of deference to the PTO's interpretation of § 315(b). It argues that we should give the PTO's regulation on time-bar determinations, 37 C.F.R.

§ 42.101(b), deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or at least give the Board's interpretation of the regulation deference under *Auer v. Robbins*, 519 U.S. 452 (1997). Appellee's Br. 38–40.

The governing PTO regulation states:

A person who is not the owner of a patent may file with the Office a petition to institute an inter partes review of the patent unless:

. . . .

(b) The petition requesting the proceeding is filed more than one year after the date on which the petitioner, the petitioner's real party-in-interest, or a privy of the petitioner is served with a complaint alleging infringement of the patent . . . .

37 C.F.R. § 42.101. We do not, however, give *Chevron* deference to an agency regulation that merely parrots the statutory language. *See Gonzales v. Oregon*, 546 U.S. 243, 257–58 (2006); *Click-To-Call*, 899 F.3d at 1338 ("The governing regulation [§ 42.101(b)] largely parrots § 315(b) . . . ."). Nor do we give *Auer* deference to an agency's interpretation of a parroting regulation. *See Gonzales*, 546 U.S. at 257 ("An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.").

ON argues further that the Board's nonprecedential decisions interpreting § 315(b) are entitled to *Chevron* deference. Appellee's Br. 38 (referring to *Synopsys*, No. IPR2012-00042, Paper 60 at 12, and *ARRIS*, No. IPR2016-00430, Paper 9 at 6). Based on these facts and the similarity between the regulatory and statutory text, we decline to give *Chevron* deference to these nonprecedential Board decisions, which do not even bind other panels of the

Board.[9] *See Click-To-Call*, 899 F.3d at 1341 ("[B]ecause the regulation merely parrots the statute, deference is not owed even to the Director's interpretation of the regulation, much less to a Board panel's interpretation."); *see also United States v. Mead Corp.*, 533 U.S. 218, 230–31 (2001); *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1320 (Fed. Cir. 2017) (en banc) (plurality opinion) ("Because *Chevron* deference displaces judicial discretion to engage in statutory interpretation, it requires a relatively formal expression of administrative intent, one with the force and effect of law.").

Because there is no agency interpretation deserving of the requested deference, we resort to the traditional principles of statutory construction without deference to the PTO and adopt the most natural reading of § 315(b) explained above.

5

In light of the foregoing, we hold that this IPR was time-barred by § 315(b) because Fairchild was an RPI at the time the IPR was instituted, even though it was not an RPI at the time the petition was filed.

In view of this holding, we need not reach the remaining issues raised in this appeal—including Power Integrations' arguments pertaining to obviousness, commercial success, claim construction, and discovery. Nor do we address Power Integrations' argument that, even if privity and RPI relationships should be determined only at filing for purposes of § 315(b), the IPR would still be time-barred because ON was acting as Fairchild's proxy in filing the petition for IPR, or at least was in privity with Fairchild at the time the petition was filed.

---

[9] Indeed, this court has not yet opined on whether deference is warranted for precedential Board decisions.

## III

For the foregoing reasons, we vacate the Board's final written decision and remand for the Board to dismiss IPR2016-00809.

### VACATED AND REMANDED

### COSTS

The parties shall bear their own costs.